STATE of Missouri, Respondent,

v.

Marjorie HARVEY, Appellant.

No. 15670.

Missouri Court of Appeals,
Southern District,
Division One.

March 8, 1989.

Scott B. Tinsley, Springfield, for appellant.

William L. Webster, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

HOLSTEIN, Chief Judge.

Following a jury trial, defendant Marjorie Harvey was found guilty and sentenced to one year in the county jail for the Class C felony of child abuse. § 568.060.[1] The only issue presented on appeal is whether the trial court erroneously allowed the state to introduce evidence of another crime. We affirm.

The specific evidence of which defendant complains is the testimony of defendant's former husband, Hugh Harvey, and the testimony of two police officers who investigated the offense. In addition, defendant takes issue with the admission of two of three photographs taken in defendant's house. The testimony and exhibits relate to the "unkempt condition and lack of utilities in defendant's house and the defendant's alleged neglect of her children."

The offense for which defendant was convicted arose out of an altercation between defendant and Hugh Harvey (hereafter "Hugh"). On August 31, 1987, defendant was away from home on a trip. Hugh went to defendant's house and found defendant's four unsupervised children in the yard. Because he was father of two of the children, he took all the children to his house, gave them a bath, and fed them. They spent the night, the following day, and the evening with him. Hugh, the defendant's children, and Hugh's stepdaughter, the five year old female victim of the crime, were all at Hugh's house. All the children had gone to bed sometime before midnight. At approximately 1:00 a.m. on September 2, the defendant knocked on Hugh's front door. Hugh answered the door finding defendant accompanied by her sister. Defendant demanded that she be allowed to take the children. Defendant's sister went into the house while Hugh and the defendant stepped outside the house and engaged in an argument about whether defendant would be allowed to take the children home.

Just as Hugh thought that defendant and her sister were about to leave, defendant started forcing her way into the house. Defendant's sister grabbed Hugh. The three began to struggle in the living room of Hugh's house. Both the defendant and her sister were biting and trying to hit Hugh with various objects including a vase and an ashtray. The altercation continued from the living room to the bedroom where the five children were sleeping in one bed. After entering the bedroom, the three participants tripped over a bicycle waking the children. At defendant's direction, her four children ran from the room. The victim remained in the bed. Hugh, the defendant, and defendant's sister fell to the bed. At that point, the defendant reached up and grabbed the victim's leg. The victim began screaming.

According to Hugh, he fell on top of defendant. While he was struggling with defendant's sister, defendant managed to free herself from underneath his body. It was then that she bit the child on the back. As the fight continued, defendant grabbed the victim and bit her several more times,

**1.** Unless otherwise indicated, all references to statutes are to RSMo 1986.

including two bites on the face. She then struck the child in the face and choked her. On seeing this, Hugh struck both defendant and her sister with his fist. The altercation terminated when Hugh pulled a knife from a tool box and chased both defendant and her sister from the house.

The state attempted to elicit testimony regarding the unkempt condition of defendant's house and the lack of utilities as well as offering three photographs taken in defendant's home on the night of the incident. Two of the photographs depict defendant's kitchen in which debris is piled up near a window and a cooking stove. The third photograph is of defendant's bedroom, showing it to be cluttered. During the state's case in chief, each objection made to such evidence by defense counsel was sustained. Defendant, called as a witness on her own behalf, was cross-examined by the prosecuting attorney as follows:

Q: Did you realize that you didn't have any utilities on in your house?

A: Once I got there, yes, I did.

Q: Did you realize that your toilet had been stopped up and hadn't been working for quite awhile when you got to your house?

A: Once I got there, yes, I did.

Q: And did you realize that there was garbage covering the entire kitchen floor when you got in there?

A: When I got there, it was piled up under the window.

Q: In fact it was piled up to the top of the wood frame of the window, is that right?

A: It's very low.

Q: And you knew all that when you went to get your children out of Hugh Harvey's house?

A: Yes, I did.

There was no objection to this testimony.

During rebuttal the state initially offered all three photographs again, but withdrew the one of the bedroom. The court, noting that the conditions described in the oral testimony were worse than depicted in the photographs, allowed the two photographs in evidence.

■ The court sustained each objection made to the testimony of Hugh and the two police officers about the conditions of defendant's house. There was no request that the jury be instructed to disregard the evidence or that the prosecutor be admonished to terminate further inquiry. Where defendant's objections to questions are sustained and there is no further objection or motion directed to the court, nothing is preserved for review on appeal. *State v. Montgomery*, 223 S.W.2d 463, 466–67 (Mo. 1949); *State v. Sand*, 731 S.W.2d 488, 492 (Mo.App.1987).

■ The question of the admissibility of the photographs of defendant's kitchen was preserved because they were admitted over defendant's timely objection. Defendant asserts the pictures are evidence of another crime. However, she fails to identify what crime is proved by photographs of a filthy kitchen. We assume the crime is the Class A misdemeanor provided for in § 568.050, endangering the welfare of the children who resided in defendant's home. That crime is unrelated to the offense for which she was on trial. Ordinarily, evidence of unrelated crimes is inadmissible. *State v. Mallett*, 732 S.W.2d 527, 534 (Mo. banc), *cert. denied*, —— U.S. ——, 108 S.Ct. 309, 98 L.Ed.2d 267–68 (1987).

■ When evidence of other crimes is admitted, it is presumed to be prejudicial, but the presumption may be overcome by the facts and circumstances of a particular case. *Burton v. State*, 641 S.W.2d 95, 99 (Mo. banc 1982); *State v. Hawkins*, 703 S.W.2d 67, 69 (Mo.App.1985). The state overcomes the presumption by showing beyond reasonable doubt that the error is harmless. *State v. Miller*, 650 S.W.2d 619, 621 (Mo. banc 1983); *State v. Taylor*, 739 S.W.2d 220, 224 (Mo.App.1987).

There are two reasons any error in admitting the photographs is not prejudicial. First, the admission of the photographs, being merely cumulative evidence of another crime, does not result in reversible error when like evidence has previously been admitted without objection. *State v. Teal*, 624 S.W.2d 122, 126 (Mo.App.1981). Second, error, which in a close case might call

for reversal, may be disregarded as harmless where the proof of guilt is strong. *State v. Schmidt*, 748 S.W.2d 773, 776 (Mo. App.1988); *State v. Hawkins, supra.* The evidence of guilt in this case is overwhelming. We are convinced that had the photographs of the dirty kitchen been excluded, the result reached would have been no different. Consequently, there is no prejudice from the admission of the two photographs. The judgment is affirmed.

CROW, P.J., and GREENE, J., concur.