**STATE of Missouri,**
**Plaintiff–Respondent,**

v.

**Mark Edwin WRIGHT,**
**Defendant–Appellant.**

**Mark Edwin WRIGHT,**
**Movant–Appellant,**

v.

**STATE of Missouri,**
**Respondent–Respondent.**

**Nos. 54957, 58238 and 58470.**

Missouri Court of Appeals,
Eastern District,
Division 3.

May 7, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 5, 1991.

Melinda Kay Pendergraph, St. Louis, Lawrence G. Gillespie, Webster Groves, for appellant.

William L. Webster, Atty. Gen., Geoffrey W. Preckshot, Asst. Atty. Gen., Jefferson City, for respondent.

STEPHAN, Judge.

Mark Edwin Wright appeals from his convictions, after a three day jury trial, on one count of first degree burglary, Section 569.160, RSMo 1986, and one count of stealing over $150.00, Section 570.030, RSMo 1986. Additionally, Wright appeals the dismissal of his Rule 29.15 motion for post-conviction relief without an evidentiary hearing. We affirm.

On November 24, 1987, a grand jury indicted Wright on five counts of burglary in the first degree, Section 569.160, RSMo 1986, and one count of stealing over $150.00, Section 570.030 RSMo 1986. In this indictment, the grand jury alleged that Wright was a prior offender. On April 5, 1988, the State filed a motion to sever counts I and VI, two of the counts of burglary in the first degree, and to proceed on counts II, III, IV and V of the indictment. The court granted this motion, and the cause proceeded to trial. The jury: (1) found Wright not guilty on one count of burglary (Count II of the indictment); (2) was hung on another count of burglary (Count V of the indictment); and (3) found Wright guilty of one count of burglary in the first degree (Count III of the indictment) and one count of stealing over

$150.00 (Count IV of the indictment). The court declared a mistrial on the count in which the jury was hung. The court sentenced Wright to twelve years imprisonment for the burglary, and three years imprisonment for stealing over $150.00. The court ordered the sentences to run concurrently.

Wright subsequently pled guilty to counts I, V and VI of the indictment. The court sentenced Wright to: (1) five years imprisonment on count I to run consecutive to counts III and IV; (2) five years imprisonment on count V to run concurrent to counts I, III and IV; and (3) five years imprisonment on count VI to run concurrent to counts I, III, IV and V. The court therefore sentenced Wright to a total of seventeen years imprisonment. Additionally, the court ordered Wright to pay $36.00 to the Crime Victim's Compensation Fund.

Since Wright's appeal only involves counts III and IV of the indictment, we will only recite those facts necessary for a determination of Wright's allegations. The State adduced the following evidence at trial. On July 19, 1987, Sadie Cook's neighbor knocked on her door at about 1:00 to 2:00 a.m. Cook answered the door, talked to the neighbor, and discovered that a 13-inch Sears Silverstone television was missing from her home. The television had been sitting atop another television in Cook's front room when she last saw it, just prior to retiring at about 12:05 a.m. Cook did not give anyone permission to remove the set or be inside her home during the period in which the television set disappeared. Though Cook originally paid $218.00 for the television, Sears informed Cook it would cost $250.00 to replace.

In late September, 1987, St. Louis Police Detectives Robert Froehlich and Charles Thompson believed that Wright was responsible for several unsolved burglaries in their district. Detective Thompson therefore requested that William Fitzpatrick, a St. Louis Police Department latent fingerprint examiner, compare Wright's finger-prints to prints taken from burglaries in the sixth district. Wright's fingerprints tied him to a burglary on Church Road.[1]

On September 30, 1988, Detective Froehlich arrested Wright. He took Wright to the sixth district detective bureau and read him his *Miranda* rights. Wright signed a statement, waiving his rights. Wright then confessed to the burglary on Church Road.

The next day, Detective Joseph McCulloch questioned Wright. Detective McCulloch again read Wright his rights. Wright waived his rights, for the second time. Wright then admitted to burglarizing Cook's residence, taking a small television set that he found sitting atop another television. Wright told the detectives that the television was at his girlfriend's apartment. Thereafter, Wright additionally confessed to a burglary on Gimblin.[2]

After the detectives finished questioning Wright, Detectives Froehlich and Thompson went to Wright's girlfriend's apartment. Wright's girlfriend turned a television set over to the police. Cook later positively identified the television.

At the end of the State's case, Wright made a motion for judgment of acquittal. The trial court overruled this request. Thereafter, Wright testified on his own behalf. Wright alleged that he was coerced and beaten into: (1) making incriminating statements; (2) signing *Miranda* waivers; and (3) confessing. Wright denied any involvement in the burglaries. Wright again made a motion for judgment of acquittal. The court similarly overruled this motion. The jury subsequently found him guilty, as previously stated.

On February 16, 1989, Wright filed a *pro se* motion for post-conviction relief pursuant to Rule 29.15. On February 21, 1989, the trial court appointed the Special Public Defender's Office to represent Wright in his post-conviction efforts. However, on March 7, 1989, the trial court permitted

1. This burglary was the subject of Count V of the indictment, upon which the jury could not reach a verdict.

2. This burglary was the subject of Count II of the indictment, for which the jury acquitted Wright.

that office to withdraw, due to a conflict of interest.

On July 17, 1989, Michael Hardcastle, appointed counsel, appeared on Wright's behalf. He requested additional time to file Wright's amended Rule 29.15 motion, up to and including August 4, 1989. His request was granted. On August 10, 1989, the State filed a motion to dismiss. The following day, Hardcastle again requested additional time to file Wright's amended Rule 29.15 motion. On August 21, 1989, at Hardcastle's request, the cause was continued so that he could file an amended motion on Wright's behalf. On September 15, 1989, the cause was reset for a hearing on September 29, 1989, at which time the court overruled both the State's motion to dismiss and Wright's motion to vacate. At that time, no amended motion had been filed. The court, therefore, entered Findings of Fact and Conclusions of Law on October 10, 1989, denying Wright's Rule 29.15 motion.

Wright's first point on appeal is that the trial court abused its discretion in failing to declare a mistrial, *sua sponte*, when the prosecutor asked Detective Froehlich whether another officer compared Wright's fingerprints to those lifted at various burglaries in the sixth district. Wright contends that the question elicited evidence of alleged prior acts of misconduct, which were similar to the charged offense. Wright argues that this prejudiced him and denied him his right to a fair trial.

■ At the outset, we note that Wright did not make any reference to Detective Froehlich's testimony in his motion for a new trial. Since Wright did not present an issue regarding Detective Froehlich's testimony to the trial court in his motion for a new trial, this issue is not preserved for appellate review. *State v. Woodland*, 768 S.W.2d 617, 618 (Mo.App.1989); Rule 29.-11(d).

■ Though the error of which Wright complains is not preserved for review, we will gratuitously review his contention pursuant to Rule 30.20. Under this rule, Wright bears the burden of demonstrating the action of the trial court was not only erroneous, but that the error so substantially impacted on his rights that manifest injustice will result if the error is left uncorrected. *State v. Hornbuckle*, 769 S.W.2d 89, 93 (Mo. banc 1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 171, 107 L.Ed.2d 128. Relief under plain error, therefore, requires Wright to go beyond a mere showing of demonstrable prejudice to show manifest prejudice affecting his substantial rights. *Id.*

■ As was previously stated, Wright contends that Detective Froehlich's testimony impermissibly referred to prior acts of misconduct. Criminal defendants have a right to be tried only for the offense with which they are charged. *State v. Hornbuckle, supra,* 769 S.W.2d at 96. Proffered evidence will run afoul of this rule if it shows that the defendant has committed, been accused of, been convicted of, or definitely associated with another crime or crimes. *Id.* However, where evidence of other crimes has been admitted without objection, later admission of identical evidence is not prejudicial. *State v. Harvey,* 766 S.W.2d 175, 177 (Mo.App.1989). This principle applies here. Before Detective Froehlich testified, William Fitzpatrick, a latent fingerprint examiner for the St. Louis Metropolitan Police Department, testified. The following exchange occurred:

Q. [by prosecutor to Fitzpatrick]: All right. Now, in late September of 1987, were you asked by a detective in the Sixth Bureau, Charles Thompson, to assist you—to assist him in the investigation of *some burglaries?* (Emphasis ours).

A. Yes.

Q. What did he ask you to do?

A. He asked me to prepare the fingerprints of the comparison with latent evidence brought in through the Sixth District area.

Q. All right. So now what did you do, what was the first thing you did?

A. I went to the defendant's LID jacket, that's local identification jacket. I

obtained the fingerprint classification of the defendant.

\* \* \* \* \* \*

A. Once obtaining the classification, I went to our master known file and got the defendant's fingerprint card out of the file, and using that fingerprint card, I searched *the whole Sixth District* for the year of '87.... (Emphasis ours).

On cross-examination, Wright's own counsel also elicited testimony that there was evidence that Wright was suspected in *some* burglaries. The following exchange occured:

Q. [by defense counsel to Fitzpatrick]: And at that time [September 30th] didn't Officer Thompson tell you that he thought he had a suspect who had been involved in *some* burglaries? (Emphasis ours).

A. He had requested that I search the fingerprints of the defendant.

Q. Didn't he indicate to you that the defendant, as you referred to him, was Mark Wright?

A. Yes.

Q. So you knew this before you even began to make your comparison of the print—of the print lift and Mark Wright's prints that he was, in fact, a suspect in *some burglaries?* (Emphasis ours).

A. I knew the name, just to—I needed a name to find out the LID number of the defendant but—

Q. But?

A. As far as the burglaries, no, he just requested a search be made.

Q. You knew what—from the LID number that he had been arrested, correct?

A. Right.

The above testimony indicates that both parties repeatedly referred to "some" burglaries. After Fitzpatrick testified, Detective Froehlich testified. The complained of testimony is as follows:

Q. [by prosecutor to Froehlich]: In late September did you know Mark Wright, had you ever seen him before?

A. Yes.

Q. All right. Now, on the 27th of September, were your suspicions directed towards Mark Wright?

A. Yes.

Q. Did you or your partner ask William Fitzpatrick of the latent print identification section to examine his fingerprints and compare those with fingerprints lifted at *various burglaries* in the sixth district? (Emphasis ours).

A. Yes.

Q. Did you or your partner actually make the request of him?

A. Charles Thompson called Fitzpatrick and asked him to compare the prints.

Q. All right. His request was to compare the prints of Mark Wright with prints that had been lifted at *various burglaries* in the sixth district, is that right? (Emphasis ours).

A. Yes, ma'am.

THE COURT: The jury is instructed to disregard the answer of the witness as to *various burglaries.* Counsel, you're to restrict yourself as to what it is [sic] evidence. I believe a print has been lifted from one burglary, isn't that the evidence? (Emphasis ours).

[THE PROSECUTOR]: The request of Mr. Fitzpatrick was to check the file. That was the request made to him as he has testified.

THE COURT: We are dealing, as I say, with three. Let's proceed.

[THE PROSECUTOR]: All right.

■ Initially, we note that Wright was charged with various burglaries as is evidenced by the fact that he was on trial for three counts of first degree burglary. Detective Froehlich's general reference to an unspecified number of burglaries for the purpose of explaining the process by which Wright was identified as the perpetrator of *one* of those burglaries cannot be considered improper where Wright was on trial for multiple offenses.

■ Moreover, the above passage clearly indicates that the prosecutor asked Detective Froehlich twice whether Thompson, his partner, asked Fitzpatrick to compare Wright's prints with fingerprints lifted at

various burglaries in the sixth district. Defense counsel did not object to either question. Thus, since defense counsel failed to object to references to other crimes when first elicited, the admission of it the second time was not prejudicial. *State v. Harvey, supra,* 766 S.W.2d 175, 177 (Mo.App.1989). Furthermore, lack of prejudicial effect is particularly apparent since: (1) both parties repeatedly referred to some burglaries during Fitzpatrick's testimony; and (2) the judge instructed the jury to disregard Froehlich's answer regarding various burglaries. Failure of the trial court to declare a mistrial *sua sponte* following Detective Froehlich's reference to various burglaries did not result in manifest injustice. Therefore, Wright's first point is denied.

Wright's second point is that the motion court erred in entering a judgment on his post-conviction motion because his post-conviction counsel did not adequately present his claims. Specifically, Wright contends that reasonably competent post-conviction counsel would have known that a timely and verified amended motion is mandatory in order for post-conviction claims to be reviewable. Since his post-conviction counsel did not file a timely and verified amended motion, his rights to due process and effective assistance of counsel were denied.

■ Appellate review of the dismissal of a 29.15 motion is limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous. *Day v. State,* 770 S.W.2d 692, 695 (Mo.banc 1989). We will only deem such findings and conclusions clearly erroneous if, after reviewing the entire record, we are left with a definite and firm impression that a mistake has been made. *Id.* at 696.

■ As a general rule, a post-conviction proceeding is directed to the validity of the conviction and cannot be used as a method of challenging the effectiveness of counsel in the post-conviction proceeding. *State v. Cayson,* 785 S.W.2d 794, 796 (Mo.App. 1990). However, because an incarcerated prisoner's right to review of his conviction for constitutional infirmity inheres in our system of justice, appointed post-conviction counsel must provide a certain level of competency in his representation. *Luster v. State,* 785 S.W.2d 103, 107 (Mo.App. 1990). Rule 29.15(e) states:

> [w]hen an indigent movant files a pro se motion, the court shall cause counsel to be appointed for the movant. Counsel shall ascertain whether sufficient facts supporting the grounds are asserted in the motion and whether the movant has included all grounds known to him as a basis for attacking the judgment and sentence. If the motion does not assert sufficient facts or include all grounds known to the movant, counsel shall file an amended motion that sufficiently alleges the additional facts and grounds.

Thus, Rule 29.15(e) requires appointed counsel to file an amended motion when necessary.

Recently, our supreme court addressed the implications of Rule 29.15(e). *Luleff v. State,* 807 S.W.2d 495 (Mo.banc 1991). The court explained that, absent some performance by post-conviction counsel, the motion court cannot determine whether the *pro se* pleading can be made legally sufficient by amendment or whether there are other grounds for relief known to movant but not included in his *pro se* motion. *Id.* at 497. The court, therefore, concluded that, unless the record reflects that appointed counsel made the determinations required by Rule 29.15(e), there is a presumption that counsel failed to comply with the rule. *Id.* The court ordered that if counsel finds filing an amended motion is not warranted, counsel should make that determination part of the record. *Id.* Finally, the court mandated that where there is no record of activity by post-conviction counsel, the motion court must make a *sua sponte* inquiry regarding the performances of both movant and counsel. *Id.* at 498. If counsel's apparent inattention results from movant's negligence or failure to act, movant is entitled to no relief other than that which may be afforded upon the *pro se* motion. *Id.* If, however, the motion court determines that counsel has failed to act on movant's be-

half, it must appoint new counsel, allowing time to amend the *pro se* motion. *Id.*

Here, on July 17, 1989, Michael Hardcastle, appointed counsel, appeared on Wright's behalf. At that time, he requested additional time to file Wright's amended motion, up to and including August 4, 1989. His request was granted. On August 10, 1989, the State filed a motion to dismiss. On August 11, 1989, Hardcastle again requested additional time to file an amended motion. On August 21, 1989, at Hardcastle's request, the cause was continued so that he could file an amended motion on Wright's behalf. On September 15, 1989, the cause was reset for a hearing on September 29, 1989, at which time the court overruled the State's motion to dismiss and Wright's motion to vacate. As of the hearing date, no amended motion had been filed. The court, therefore, entered Findings of Fact and Conclusions of Law, denying Wright's Rule 29.15 motion.

Though this hearing took place well before our supreme court decided *Luleff*, the hearing meets the requirements set out in *Luleff*, indicating that Wright is not entitled to relief. At the hearing, Hardcastle *sua sponte* stated that although he had requested additional information from Wright, Wright failed to provide any information. Thus, since counsel's apparent inattention in failing to file a timely and verified amended motion results from Wright's failure to cooperate, Wright is entitled to no relief other than that which may be afforded upon his *pro se* motion. Wright's second point is therefore denied.

For the reasons stated above, the conviction and denial of the Rule 29.15 motion for post-conviction relief are affirmed.

REINHARD, P.J., and CRANE, J., concur.