**In the Matter of the CARE & TREATMENT OF Gregory WADLEIGH, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. WD 62029.**

Missouri Court of Appeals, Western District.

June 29, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 31, 2004.

Application for Transfer Denied Oct. 26, 2004.

Kenneth C. Hensley, Raymore, MO, for appellant.

Gary L. Gardner, Jefferson City, MO, for respondent.

Before EDWIN H. SMITH, P.J., HOLLIGER and HARDWICK, JJ.

LISA WHITE HARDWICK, Judge.

Gregory Wadleigh appeals from a judgment committing him to the Department of Mental Health for treatment as a sexu-

ally violent predator. Mr. Wadleigh asserts the trial court erred in admitting unduly prejudicial evidence, refusing his proposed jury instructions, and denying his request for six peremptory challenges during jury selection. Finding no error, we affirm the trial court's judgment.

## I. FACTUAL AND PROCEDURAL HISTORY

In February 1995, Mr. Wadleigh pled guilty to sodomizing a five-year old boy and began serving a seven-year prison sentence. Three months prior to his scheduled release from prison in January 2002, Mr. Wadleigh was assessed by Dr. Derrise Becker, a clinical psychologist employed by the State, to determine whether he qualified as a sexually violent predator (SVP), as defined in Section 632.480(5).[1] Dr. Becker diagnosed Mr. Wadleigh as a pedophile, an evaluation that indicated he was likely to fit the SVP definition. Her evaluation was based on reports of Mr. Wadleigh's sexual and criminal history, as well as his failure to complete the Missouri Sex Offender Program (MOSOP) while incarcerated. The State submitted Dr. Becker's evaluation to two statutory review committees,[2] both of which agreed that Mr. Wadleigh qualified as an SVP.

In January 2002, the State filed a petition in Jackson County Circuit Court to declare Mr. Wadleigh as an SVP and commit him for treatment to the Department of Mental Health. Mr. Wadleigh requested a jury trial on the petition after the court made a probable cause finding.

In preparation for trial, the parties retained multiple experts to evaluate Mr. Wadleigh and review his records. Most of the experts submitted reports referencing Mr. Wadleigh's 1984 guilty plea to a misdemeanor charge that he made harassing telephone calls to approximately thirty security guards at Montgomery Wards after he was released as a store employee. In making these calls, Mr. Wadleigh told one guard: "I'm going to kill you. I'm going to kill your family. I'm going to cut off your dick. You work for a shit ass company. You are a no good mother fucker. I want you to screw me. I'm going to kill you tonight." And, to one female guard he said, "I was going to stick a knife in her pussy." When asked about these phone calls, Mr. Wadleigh said: "After making them, I felt like I should continue making them and I knew what I was doing was not right but something in me just kept telling me to keep doing it." He also admitted to the arresting officer that he had been in therapy in 1981–82 for child molestation. He told the officer, "When I had the drive molesting children I have had the same type of drive in making threatening phone calls." Following his guilty plea on the telephone harassment charge, Mr. Wadleigh received a suspended imposition of sentence and successfully completed a two-year probation period.

1. All statutory references are to the Revised Statutes of Missouri 2000, unless otherwise noted.

Section 632.480(5) defines a "Sexually violent predator" as any person who suffers from a mental abnormality which makes the person more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility and who:

  (a) Has pled guilty or been found guilty, or been found not guilty by reason of mental disease or defect pursuant to section 552.030, RSMo, of a sexually violent offense; or

  (b) Has been committed as a criminal sexual psychopath pursuant to section 632.475, RSMo, and statutes in effect before August 13, 1980.

2. The reviews were conducted by a multidisciplinary team of State employees from the Department of Health and Department of Corrections, and by a prosecutor's review committee. See § 632.483.4—5.

In the SVP proceeding, Mr. Wadleigh filed a pretrial motion in limine to exclude evidence of the 1984 charge as irrelevant and unduly prejudicial. He argued the incident was remote in time and in subject matter because telephone harassment is not identified as a sexually violent offense under the SVP statute. The trial court denied the motion, finding the evidence relevant because some of the experts relied on the harassment charge as a factor in evaluating Mr. Wadleigh's current condition.

During the State's case at trial, Dr. Becker referred to the 1984 charge and characterized the telephone harassment incident as sexual in nature. Dr. Becker found it significant that Mr. Wadleigh had an "urge" to make the calls, much like the urge he admitted having when he molested children. Based on his history of sexual misconduct and failed treatment, Dr. Becker testified that Mr. Wadleigh was at high-risk to re-offend if not confined in a secure facility.

The State presented similar testimony from Dr. Roy Lacoursiere, a psychiatrist who reviewed Mr. Wadleigh's records. Dr. Lacoursiere found the 1984 harassment calls overtly sexual in nature and indicative of Mr. Wadleigh's lack of control over his sexual urges in that, as with his child molesting, once he started he couldn't stop. Dr. Lacoursiere evaluated Mr. Wadleigh based on two actuarial scoring devices commonly used by mental health professionals to predict the recidivism of an SVP: the Static 99 and the Minnesota Sex Offender Screening Tool (MnSOST). One key factor in the weighted scoring is the number of arrests and/or convictions for prior sexual offenses. Dr. Lacoursiere testified that Mr. Wadleigh scored at high risk on both devices and would be more likely than not to engage in predatory acts

of sexual violence if not confined for treatment.

Mr. Wadleigh did not object to the testimony of the State's experts regarding the 1984 charge, but he did object on relevancy grounds when a police officer began testifying about the harassment incident. The trial court overruled the objection.

In Mr. Wadleigh's defense, two clinical psychologists testified that he was at medium to low risk to re-offend based on their scoring of the actuarial tests. These experts, Dr. Steven Mandracchia and Dr. Gregory Sisk, acknowledged the 1984 charge but did not include it among the assessment risk factors. Dr. Sisk testified the instructions for the MnSOST disallow consideration of obscene phone calls as a prior offense. He felt the 1984 harassment charge fit that category and, therefore, should not be factored in the risk assessment scoring.

After the close of evidence, the jury returned a verdict finding that "Gregory Wadleigh should be committed to the Department of Mental Health for control, care and treatment as a sexually violent predator." The trial court entered judgment placing Mr. Wadleigh in the custody of the Department of Mental Health until such time as his "mental abnormality has so changed that he is safe to be at large." Mr. Wadleigh appeals.

### ADMISSIBILITY OF EVIDENCE

■ In his first point on appeal, Mr. Wadleigh contends the trial court erred in admitting evidence of the 1984 telephone harassment charge because the prejudicial effect of the evidence outweighed any probative value. He argues the incident was irrelevant to the SVP determination, in that it occurred nearly twenty years ago and arose in the context of a labor dispute during which he was fired from his job. He contends the profanity-laden evidence

was "calculated" to evoke an emotional jury response and thereby posed "the danger of unfair prejudice."

The admission or exclusion of evidence is at the sound discretion of the trial court. *Thornton v. Gray Auto. Parts Co.*, 62 S.W.3d 575, 583 (Mo.App. W.D. 2001). Our review is limited to a determination of whether the trial court's decision is an abuse of discretion so arbitrary or unreasonable as to shock the sense of justice or is indicative of an absence of careful consideration. *Id.* Even when this threshold is met, we will not reverse unless the error had a material effect upon the merits of the action. *Id.*

In his motion in limine, Mr. Wadleigh objected to the 1984 charge based on a traditional relevancy argument that it did not tend to prove or disprove a fact issue at trial. The trial court denied the motion because the evidence was relied on by the State's experts and, therefore, was subject to the admissibility standards set forth in Section 490.065.3. The statute provides:

> The facts or data in a particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing and must be of a type reasonably relied upon by experts in the field in forming opinions or inferences upon the subject and must be otherwise reasonably reliable.

Section 490.065.3. Applying this statute, our court has held that experts can rely on evidence not otherwise admissible, as long as it is the type of evidence reasonably relied upon by other experts in the field. *Peterson v. Nat'l Carriers, Inc.*, 972 S.W.2d 349, 355 (Mo.App. W.D.1998). Mr. Wadleigh did not object to the admissibility of the evidence under Section 490.065.3. Nor did he offer any objection when the experts testified about the harassment incident at trial. Thus, the trial court admitted evidence of the 1984 charge as a factor that formed the basis for the experts' opinions that Mr. Wadleigh was at high-risk to commit sexually violent offenses in the future.

On appeal, Mr. Wadleigh contends the trial court erred in allowing a police officer to testify about the harassment incident. We note that the police officer's testimony was merely a reiteration of the facts relied on by the experts. The officer's testimony was cumulative of other evidence properly heard by the jury. Given Mr. Wadleigh's failure to challenge (either at trial or on appeal) the relevancy of the harassment charge under Section 490.065.3, he concedes the admissibility of the evidence through the experts' testimony and cannot show an abuse of the trial court's discretion in allowing a non-expert witness to testify regarding the same facts.

The 1984 charge had significant probative value as "facts or data" underlying the expert testimony at trial. Even though the harassment charge dates back nearly two decades, Mr. Wadleigh did not dispute that it was the type of evidence reasonably relied upon by experts in determining the recidivism rate of sexual offenders. The sexually explicit nature of the harassment also refutes any argument that he was unfairly prejudiced by evidence of his conduct during a labor dispute. Two of the experts found it noteworthy that Mr. Wadleigh's lack of control over his urge to make the threatening calls was reflective of his similar compulsion to molest children. Mr. Wadleigh's point is denied, as the probative value of the 1984 charge outweighed any prejudice.

## JURY INSTRUCTIONS

In his second, third, and fourth points on appeal, Mr. Wadleigh contends the trial court erred in failing to give three

jury instructions he proposed. We review a trial court's refusal of instructions under an abuse of discretion standard. *Linton v. Mo. Highway & Transp. Comm'n*, 980 S.W.2d 4, 10 (Mo.App. E.D.1998). To warrant reversal of a verdict, instructional error must be prejudicial. *Id.*

■ Mr. Wadleigh argues, in his second and fourth points, that the court refused two Missouri Approved Instructions— Criminal (MAI–CR) and thereby allowed the jury to deliberate without an accurate and complete statement of the law pertaining to his case. His proposed Instruction A was patterned upon MAI–CR 3d 306.04, as follows:

### INSTRUCTION NO. A

You will recall that certain doctors testified to statements that they said were made to them during or in connection with their inquiry into the mental condition of the Respondent, Gregory Wadleigh.

In that connection, the Court instructs you that under no circumstances should you consider that testimony as evidence that the Respondent did or did not commit the acts alleged against him.

MAI–CR 3d 306.04 is a limiting instruction to be used in Section 552.030 proceedings where a criminal defendant undergoes a mental examination pursuant to a plea of not guilty by reason of mental disease or defect excluding responsibility. *State v. Jackson*, 918 S.W.2d 266, 268 (Mo.App. E.D.1996). In those criminal cases where the mental experts rely on statements made by the defendant, the instruction is necessary to protect the defendant's Fifth Amendment constitutional right against self-incrimination. See *State v. Barnes*, 740 S.W.2d 340, 344 (Mo.App. E.D.1987). The purpose of the 'statement to doctors' instruction is to avoid jury confusion between the information relied upon by mental health experts in determining the defendant's mental disability and the actual evidence of the defendant's criminal conduct. *State v. Speedy*, 543 S.W.2d 251, 256–57 (Mo.App.1976).

At trial, some of the experts based their medical opinions on statements or admissions allegedly made by Mr. Wadleigh. In light of the trial court's refusal to give Instruction A, Mr. Wadleigh argues the jury was allowed to speculate that information relied on by the experts was probative evidence of the truthfulness of his statements and admissions. He contends the jury had no basis to differentiate between the State's actual evidence of his current mental condition and the unproven "facts" used to support the experts' opinions.

■ In Missouri, SVP commitments are civil proceedings. *Thomas v. State*, 74 S.W.3d 789, 790 (Mo. banc 2002). While some criminal due process protections are afforded to those facing commitment,[3] there is no requirement that the trial court give a 'statement to doctors' instruction in civil cases generally or under the SVP statute. The instruction is required only in criminal cases to protect the accused from self-incrimination, a constitutional right which the U.S. Supreme Court has held is not applicable in civil commitment

**3.** Criminal procedures incorporated into Missouri's SVP statute include: the State's burden of proof beyond a reasonable doubt; the defendant's right to jury trial and assistance of counsel; and the requirement of a unanimous jury verdict. §§ 632.492, 632.495, RSMo. Cum.Supp.2002. The inclusion of these procedures does not transform the civil commitment proceeding into a criminal prosecution. As held in *Kansas v. Hendricks*, 521 U.S. 346, 364, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997), "the State's decision 'to provide some of the safeguards applicable in criminal trials cannot itself turn [sexually violent predator] proceedings into criminal prosecutions.' "

proceedings. *Allen v. Illinois*, 478 U.S. 364, 374, 106 S.Ct. 2988, 92 L.Ed.2d 296 (1986). Because treatment, rather than punishment, was the purpose of the proceeding, Mr. Wadleigh's statements to the mental health experts were not shielded by the Fifth Amendment privilege. *Id.* at 373. The trial court did not abuse its discretion in refusing to offer his proposed Instruction A. Point II is denied.

■ Similarly, we find no error in the trial court's refusal to give Mr. Wadleigh's proffered Instruction C [4] regarding the presumption of innocence, as patterned after MAI–CR 3d 302.04. Mr. Wadleigh contends the instruction would have served as "a reminder to the jury" about the State's burden of proving beyond a reasonable doubt that he was an SVP. See § 632.495. However, the instruction was not required in this civil proceeding.[5] The jury was adequately instructed regarding the State's burden of proof, and Mr. Wadleigh does not argue otherwise. Accordingly, he has failed to demonstrate any abuse of discretion or prejudice in the refusal of his reminder instruction. Point IV is denied.

■ Mr. Wadleigh also proposed a jury instruction informing the jury that it could not find him to be an SVP based solely upon prior offenses. The proffered instruction stated:

### INSTRUCTION NO. B

In reaching your verdict you may not find the Respondent to be a sexually violent predator based upon prior of-

fenses alone, absent evidence that he presently has a mental abnormality that makes him more likely than not to commit predatory acts of sexual violence if not confined in a secure facility.

The Respondent is presumed not to be a sexually violent predator, unless and until, during your deliberations upon your verdict, you find him to be a sexually violent predator. This presumption that the Respondent is not a sexually violent predator places upon the Petitioner the burden of proving beyond a reasonable doubt that the Respondent is a sexually violent predator.

The trial court rejected Instruction B because it failed to require the jury to find that Mr. Wadleigh's mental abnormality causes him "serious difficulty" in controlling his behavior, as mandated in *Thomas*, 74 S.W.3d at 791–92. The court further found the proposed instruction was inconsistent with the verdict director, which was given as follows:

### INSTRUCTION NO. 6

If you find and believe from the evidence beyond a reasonable doubt:

First, that the respondent pleaded guilty to sodomy in the Circuit Court of Jackson County, State of Missouri, on February 1, 1995, and

Second, that the offense for which the respondent was convicted was a sexually violent offense, and

Third, that the respondent suffers from a mental abnormality, and

Fourth, that this mental abnormality makes the respondent more likely than

---

4. Instruction C stated:

The allegation that the Respondent, Gregory Wadleigh, is a sexually violent predator is not evidence, and it creates no inference that the Respondent is a sexually violent predator.

5. A similar statute in the State of Washington allows civil commitment upon proof beyond a

reasonable doubt of SVP status. Applying that statute, the Washington Court of Appeals has held that criminal constitutional protections, such as the presumption of innocence instruction, are not applicable if not required by statute. *In re Twining*, 77 Wash.App. 882, 894 P.2d 1331, 1339 (1995).

not to engage in predatory acts of sexual violence if he is not confined in a secure facility,

then you will find that the respondent is a sexually violent predator.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the respondent is not a sexually violent predator.

As used in this instruction, "sexually violent offense" includes the offense of sodomy.

As used in this instruction, "mental abnormality" means a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to commit sexually violent offenses in a degree that causes the individual *serious difficulty* in controlling his behavior.

As used in this instruction, "predatory" means acts directed towards individuals, including family members, for the primary purpose of victimization.

(emphasis added). Pursuant to this instruction, the jury was properly informed of the definitional requirements for a mental abnormality under *Thomas*. The trial court did not abuse its discretion in refusing Mr. Wadleigh's proposed instruction as an incorrect statement of the applicable law. Point III is denied.

## JURY SELECTION

In his fifth point on appeal, Mr. Wadleigh claims the trial court erred in denying his request for six peremptory challenges during jury selection. Given the trial court's broad discretion in evaluating the qualifications of prospective jurors, we will not overturn the decision absent a clear abuse of discretion and a real probability of injury to the complaining party. *State v. Harris*, 870 S.W.2d 798, 805–06 (Mo. banc 1994); *Carter v. Tom's Truck Repair, Inc.*, 857 S.W.2d 172,

177–78 (Mo. banc 1993) (requiring a showing of prejudice on peremptory challenges).

Section 494.480 provides that each party shall have three peremptory challenges in civil cases and six peremptory challenges in criminal cases punishable by imprisonment in the penitentiary. Based on the statute, the trial court properly refused Mr. Wadleigh's request for six challenges in the context of this civil SVP proceeding.

Although Mr. Wadleigh contends he was entitled to additional challenges because his liberty interests were at stake, he has failed to show any prejudice resulting from the court's compliance with statutory provision applicable to his case. Peremptory challenges help to insure the impartiality of jurors who ultimately sit on a particular case. *State v. Plummer*, 860 S.W.2d 340, 346 (Mo.App. E.D.1993). However, the loss of a peremptory strike does not automatically violate the right to an impartial jury because such challenges are not constitutionally required. *Id.* "The test under the [peremptory challenge] statute and the constitution is whether the jury actually seated was impartial." *State v. Nicklasson*, 967 S.W.2d 596, 612 (Mo. banc 1998). Mr. Wadleigh makes no claim that the selected jurors were unqualified or that the denial of additional peremptory challenges in any way affected the impartiality of his jury. His fifth point is denied, as he has failed to show any abuse of discretion or probable injury resulting from the jury selection process.

## CONCLUSION

The judgment of the trial court is affirmed.

All concur.