In the Matter of the Care and Treatment of Richard CROXTON, Appellant,

v.

STATE of Missouri, Respondent.

No. ED 90808.

Missouri Court of Appeals,
Eastern District,
Division Five.

Aug. 18, 2009.

Emmett D. Queener, Columbia, MO, for appellant.

Chris Koster and Jayne T. Woods, Jefferson City, MO, for respondent.

CLIFFORD H. AHRENS, Judge.

Richard Croxton appeals from the judgment of the trial court following a jury verdict that committed him to custody of the Missouri Department of Mental Health

("MDMH") as a sexually violent predator. Finding no error, we affirm.

Viewed in the light most favorable to the verdict, the evidence is as follows. Croxton was convicted of sexually molesting a child in Texas around 1982. Croxton had his probation transferred to Missouri in 1989. He was arrested for molesting a child in Missouri in 1992. He had first convinced the child's family that it would make financial sense for everyone if he were to move into the family's basement, and thereafter molested the child. Croxton pleaded guilty to sodomy in 1995 based on this incident, and was sentenced to a term of ten years' imprisonment.

Croxton was scheduled to be released from prison on December 5, 2003. Prior to this scheduled release date, the State of Missouri filed a petition to commit Croxton as a sexually violent predator ("SVP"). The trial found probable cause that Croxton was a SVP within the meaning of section 632.480(5) RSMo. Supp.2001, and ordered him to be taken into the custody of the St. Charles County Sheriff for an evaluation as to whether he was a SVP. The trial court further ordered the MDMH to have Croxton examined by a psychiatrist or psychologist to determine if he was a SVP as defined in section 632.480(5). Dr. Richard Scott of the MDMH performed the evaluation of Croxton, and issued a report on February 17, 2004. This report detailed Croxton's history, which included a number of separate incidents of child sexual abuse, and was based on a number of records as well as an interview with Croxton. In this report, Dr. Scott diagnosed Croxton as suffering from pedophilia, sexually attracted to females, non-exclusive type. He concluded with a reasonable degree of psychological certainty that Croxton, as a result of his mental abnormality, "is more likely than not to commit predatory acts of sexual violence if not confined in a secure facility."

The State's petition to have Croxton committed to the MDMH was tried before a jury in November 2007. Numerous exhibits were entered into evidence, including Dr. Scott's report on Croxton. Judith Braun, Croxton's former probation officer in Missouri, testified, as did Dr. Scott for the State. Dr. Luis Rossell, a psychiatrist, testified on behalf of Croxton, as did his brother, Fred Croxton. The evidence showed that Croxton had been convicted or pleaded guilty on several occasions to charges involving sexual contact with pre-teen girls in Missouri and Texas. There was additional evidence that Croxton had had improper sexual contact with additional young girls in Texas and New Mexico in the 1980s that did not result in criminal convictions.

Dr. Scott testified about his evaluation of Croxton. Dr. Scott stated that he had evaluated approximately forty-five people to determine if they were SVPs. Of that number, he had concluded that thirty-four were SVPs, and eleven were not SVPs. He diagnosed Croxton as suffering from pedophilia, attracted to females, non-exclusive type. Dr. Scott stated his opinion that Croxton's pedophilia is a mental abnormality under the Missouri statute to a reasonable degree of psychological certainty. Dr. Scott also testified that it was his opinion that based on a variety of factors, Croxton was a high risk to re-offend, and it was more likely than not that he would commit further acts of sexual violence unless he was committed to a secure facility.

Dr. Rosell testified on behalf of Croxton, and also diagnosed Croxton as suffering from pedophilia. However, it was his opinion that Croxton was less likely than not to reoffend, in part due to his age at the time of the trial.

The jury found that Croxton was a SVP. The trial court committed him to the custody of the MDMH for treatment, control, and care. Croxton now appeals from this judgment.

In his first point relied on, Croxton contends that the trial court abused its discretion by failing to declare a mistrial when the State asked Dr. Scott to testify that he has a sexually transmitted disease, which violated his rights to due process and a fair trial in that the question was "a blatant attempt" to induce the jurors to commit him based on passion and prejudice. Croxton avers that such a question was irrelevant to the issue whether he has a mental abnormality that predisposes him to commit predatory acts of sexual nature if not securely confined.

The answer at issue took place during re-direct examination of Dr. Scott by the State following cross-examination by Croxton's counsel.

> State: And finally, there was a question about Mr. Croxton's health. You saw the medical file. I think it's Exhibit 3 there. We talked about it before. You've reviewed that, right.
>
> Dr. Scott: Yes, sir.
>
> State: And Mr. Croxton also has a sexually transmitted disease, doesn't he?
>
> Dr. Scott: Yes, sir.
>
> State: No further questions.

Croxton did not timely object to the question by the State. Instead, his counsel approached the bench and asserted that the question was irrelevant and was playing on the jury's passion. Croxton's counsel moved for a mistrial, but did not request any other remedy. The trial court denied the motion.

 In general, an objection must be made at the earliest opportunity, or it will be deemed to have been waived. *State v. Norton*, 949 S.W.2d 672, 676 (Mo.App.

1997). In the present case, Croxton not only failed to make a timely objection, he did not even object after the answer had been given. He made no motion to strike or take any corrective action other than to request a mistrial. Regardless, the declaration of a mistrial is a drastic remedy that should be used only in extraordinary circumstances where prejudice can be removed in no other way. *See Ingram v. Rinehart*, 108 S.W.3d 783, 793 (Mo.App. 2003); *Norton*, 949 S.W.2d at 676. The trial court has discretion to grant or to deny a motion for mistrial. *Id.* The trial court is in a better position to determine the prejudicial effect, if any, of improper evidence and to determine whether any prejudice that results can be ameliorated by less drastic means that declaring a mistrial. *Letz v. Turbomeca Engine Corp.*, 975 S.W.2d 155, 169–70 (Mo.App. 1997). This Court will reverse the denial of a motion for mistrial only where there has been a manifest abuse of discretion. *Id.* at 170. In order to establish a manifest abuse of discretion, there must be a grievous error where the prejudice cannot be removed otherwise. *Id.*

 The trial court did not abuse its discretion in denying Croxton's motion for a mistrial. Croxton "opened the door" to questions to Dr. Scott about his health on re-direct examination by asking Dr. Scott about his health on cross-examination. On cross-examination of Dr. Scott, the following exchange took place:

> Croxton's counsel: And when we look at him [Croxton] and make some kind of estimation about fifteen years [into the future,] he's going to be seventy-seven years old?
>
> Dr. Scott: Yes, sir.
>
> Croxton's counsel: And the lifespan for an adult—for a white male in America is seventy-seven years old; correct?

Dr. Scott: An individual that's achieved the age of sixty-two actually, with no other health problems, has a longer lifespan than that. But the lifetime guess at the date of birth is seventy-seven years.

Croxton's counsel: And you are aware from the medical records that you reviewed that Mr. Croxton actually has some health issues, doesn't he?

Dr. Scott: Yes.

A party who opens a subject is held either to be estopped from objecting to its further development or to have waived the right to object to further development. *Gallagher v. DaimlerChrysler Corp.*, 238 S.W.3d 157, 169 (Mo.App.2007). Having injected the issue of his health on cross-examination of Dr. Scott, Croxton cannot complain because the State developed the issue of his health further. Assuming *arguendo* that Croxton had not opened the door to questions about his health, he has not shown that the answer given by Dr. Scott created such prejudice that it could not be removed by any remedy other than a mistrial. The argument that a jury would be more reluctant to let a child molester with a sexually transmitted disease ("STD") free to walk the streets than a child molester without an STD requires that the jury find that the person is more likely than not to commit further predatory acts of sexual violence if not confined to a secure facility. Logically, if the jury thought that it was less likely than not that a person would commit further predatory acts of sexual violence if not confined, it would not matter whether or not he had an STD. Moreover, there is nothing that indicates that a less drastic remedy than a mistrial would not have been sufficient to address the possible prejudice that Dr. Scott's answer have created. The trial court did not abuse its discretion in deny-ing Croxton's motion for mistrial. Point denied.

In his second point relied on, Croxton asserts that the trial court erred by abusing its discretion in denying his proposed Instruction No. AA, thereby violating his rights to due process of law and a fair trial. Croxton argues that his proposed instruction protected his liberty interest from improper deprivation because it informed jurors that he was presumed not to be a SVP subject to involuntary commitment "until and unless the State [met] all of the requirements necessary to involuntarily commit him to secure confinement[.]"

This Court reviews a trial court's refusal to give an instruction under an abuse of discretion standard. *In the Matter of the Care & Treatment of Gregory Wadleigh*, 145 S.W.3d 434, 439 (Mo. App.2004). Instructional error must be prejudicial error to warrant reversal of a verdict. *Id.*

Croxton's proposed instruction was as follows:

The allegation that the respondent [Croxton] is a sexually violent predator is not evidence, and it creates no inference that the respondent is a sexually violent predator.

The respondent is presumed not to be a sexually violent predator, unless and until, during your deliberations upon your verdict, you find him to be a sexually violent predator. This presumption that the respondent is not a sexually violent predator places upon the petitioner [State] the burden of proving by clear and convincing evidence that the respondent is a sexually violent predator.

The proposed instruction notes that it is based on a modified version of MAI–CR3d 302.04 and section 632.495 RSMo 2000. As Croxton notes in his brief, his proposed

instruction is substantially similar to the proposed instruction in *Wadleigh* that the trial court rejected in that case, which rejection the appellate court held not to be error. *Id.* at 440–41. The proposed instruction in that case stated:

> The Respondent is presumed not to be a sexually violent predator, unless and until, during your deliberations upon your verdict, you find him to be a sexually violent predator. This presumption that the Respondent is not a sexually violent predator places upon the Petitioner the burden of proving beyond a reasonable doubt that the Respondent is a sexually violent predator.

*Id.* Both instructions were modeled on MAI–CR3d 302.04, an instruction for criminal cases.[1] The appellate court in *Wadleigh* held that the trial court did not abuse its discretion in refusing the proposed instruction as "an incorrect statement of the applicable law." *Id.*

A civil commitment proceeding is not a criminal trial. It is a civil case, but the particular issues involved distinguish it from the standards for most civil proceedings. *See In re Van Orden*, 271 S.W.3d 579, 584–87 (Mo. banc 2008). The Missouri Supreme Court discussed the nature of civil commitment proceedings and the standards involved in such matters in detail in *Van Orden*. It held in part that:

Due process requires the use of a burden of proof that "reflects not only the weight of the private and public interests affected, but also a societal judgment about how the risk of error should be distributed between the litigants." In the usual civil litigation, the burden of proof is preponderance of the evidence because private interests predominate; therefore, the litigants share the risk of error equally. In civil cases that involve a fundamental right or liberty, due process lessens the risk of an erroneous decision by requiring proof by clear and convincing evidence. In criminal proceedings, because of the implication on the defendant's liberty interest, the state has the burden of persuading the factfinder of guilt beyond a reasonable doubt, a burden that imposes almost the entire risk of error on the state.

The Supreme Court of the United States found that clear and convincing evidence was an appropriate burden of proof in civil commitment proceedings....

Whether a beyond a reasonable doubt or clear and convincing evidence burden of proof is utilized to commit sexually violent predators is a matter of legislative prerogative. Although the proceedings involve a liberty interest, they are civil proceedings.... The statutory requirements and procedures effectively mini-

---

1. The language of MAI–CR3rd 302.04 is as follows:

> The charge of any offense is not evidence, and it creates no inference that any offense was committed or that (the) (either) (any) defendant is guilty of an offense.
> (The) (Each) defendant is presumed to be innocent, unless and until, during your deliberations upon your verdict, you find him guilty. This presumption of innocence places upon the state the burden of proving beyond a reasonable doubt that (the) (either) (any) defendant is guilty.

> A reasonable doubt is a doubt based upon reason and common sense after careful and impartial consideration of all the evidence in the case.
> Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. The law does not require proof that overcomes every possible doubt. If, after your consideration of all the evidence, you are firmly convinced that (a)(the) defendant is guilty of the crime charged, you will find him guilty. If you are not so convinced, you must give him the benefit of the doubt and find him not guilty.

mize the risk of an erroneous commitment by requiring the person to have a previous conviction of a sexually violent offense and to undergo psychiatric evaluations. The person is afforded many of the same rights of a criminal defendant, including a formal probable cause hearing, the right to a jury trial, the right to an attorney, and the right to appeal.

Further, if commitment is ordered, the term of commitment is not indefinite. A person committed as a sexually violent predator receives an annual review to determine if the person's mental abnormality has so changed that commitment is no longer necessary. The court reviews this report, and even if release is not recommended, the person may file a petition for release with the court at any time.

*Id.* at 585–86 (internal citations omitted).

 Section 632.495 does not create a presumption in favor of or against the State or the respondent in a civil commitment proceeding. Rather it requires that the "court or jury shall determine whether, by clear and convincing evidence, the person is a sexually violent predator. . . ." This issue has arisen in other states that have SVP statutes similar to those of Missouri. A comparable issue existed in the case of *In re the Detention of Palmer,* 691 N.W.2d 413, 422–23 (Iowa 2005). The respondent in *Palmer* claimed that the trial court erred in refusing to instruct the jury that he was presumed not to be a SVP. *Id.* at 422. The Iowa Supreme Court noted that the SVP law in its state is civil in nature; it is not a criminal statute. *Id.* It observed that the trial court had properly instructed the jury on the State's burden of proof, namely that the State had to prove that the respondent met all of the elements of the definition of a SVP beyond

a reasonable doubt. *Id.* It held that the instruction given by the trial court was all that the respondent was entitled to, and that he was only entitled to the beyond-a-reasonable-doubt standard because the Iowa Legislature chose to adopt that standard rather than the "clear and convincing evidence" standard. *Id.* The Iowa Supreme Court stated that the SVP law was a civil statute, and the SVP commitment hearing should be treated like a civil case, and accordingly,

> Just as the defendant in a tort suit would not be entitled to a jury instruction that he is presumed not to be a tortfeasor, [the respondent] is not entitled to an instruction that he is presumed not to be a sexually violent predator. . . . Although such an instruction would not necessarily be improper, it is not required by either the federal or the state constitution. Nor does the statute itself require such an instruction.

(internal citations omitted). *Id.* at 422–23. We find the reasoning of the Iowa Supreme Court to be persuasive.

Croxton attempts to distinguish *Wadleigh* and *Palmer,* which relied on *Wadleigh* in part, by asserting that those cases, and others that have held it is not error to refuse to instruct a jury that a respondent in a SVP commitment hearing is presumed not to be a SVP, have failed to address the fact that civil commitment involves a liberty interest, and hence is not like an ordinary civil case. It is correct that there is a liberty interest involved in a civil commitment proceeding. This is why the Supreme Court has held that the State's burden of proof in a civil commitment case is not merely a preponderance of the evidence, as it would be in an ordinary civil case, but rather clear and convincing evidence. *Addington v. Texas,* 441 U.S. 418,

432–33, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). However, it also held that proof beyond a reasonable doubt was not required because the state was not utilizing its powers in a punitive fashion, and the continuing opportunity for review minimized the chance of error. *Id.* at 427–31, 99 S.Ct. 1804.[2]

Croxton's liberty interest required that the State prove by clear and convincing evidence that he met the statutory definition of an SVP. The trial court instructed the jury to this effect, and Croxton does not contend that the trial court gave the jury improper instructions on that burden.[3] He was not entitled to anything more. Point denied.

**2.** The Supreme Court held that state law could specify whether the burden of proof for a civil commitment proceeding would be "clear and convincing evidence" or the higher burden of proof beyond a reasonable doubt. *Addington*, 441 U.S. 418, 433, 99 S.Ct. 1804.

**3.** The trial court gave the following instructions regarding the State's burden of proof:

Instruction number 5: In these instructions you are told that your finding depends on whether or not you believe certain propositions of fact submitted to you. The burden is upon the petitioner to cause you to believe by clear and convincing evidence that respondent is a sexually violent predator.

In determining whether or not you believe any such proposition, you must consider only the evidence and the reasonable inferences derived from the evidence. If the evidence in the case does not cause you to believe a particular proposition submitted, then you cannot return a finding requiring belief of that proposition.

Instruction number 6: If you believe the evidence clearly and convincingly establishes, first, that the respondent pled guilty to sodomy in the Circuit Court of St. Charles County, State of Missouri, on April 6, 1995, and second, that the offense for which the respondent was convicted was a sexually violent offense, and third, that the respondent suffers from a mental abnormality, and fourth, that

The judgment of the trial court is affirmed.

KENNETH M. ROMINES, C.J., and ROY L. RICHTER, J., concur.

this mental abnormality makes the respondent more likely than not to engage in predatory acts of sexual violence if he is not confined in a secure facility, then you will find that the respondent is a sexually violent predator. However, unless you find and believe the evidence has clearly and convincingly established each and all of these propositions, you must find the respondent is not a sexually violent predator.

As used in this instruction, sexually violent offense includes the offense of sodomy. As used in this instruction, mental abnormality means a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to commit sexually violent offenses in a degree that causes the individual serious difficulty in controlling his behavior. As used in this instruction, predatory means acts directed towards individuals, including family members, for the primary purpose of victimization.

Instruction number 7: Your verdict must be for the respondent unless you believe by clear and convincing evidence that the respondent suffers from a mental abnormality and that this mental abnormality makes the respondent more likely than not to engage in predatory acts of sexual violence if he is not confined in a secured facility.

Instruction number 8: If you find respondent to be a sexually violent predator, the respondent shall be committed to the custody of the director of the Department of Mental Health for control, care and treatment.