

# In the Missouri Court of Appeals
# Eastern District

<u>DIVISION TWO</u>

| | | |
|---|---|---|
| IN THE MATTER OF | ) | No. ED100193 |
| THE CARE AND TREATMENT OF | ) | |
| CARL COZART, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| Appellant. | ) | |
| | ) | Hon. Carolyn C. Whittington |
| | ) | |
| | ) | Filed: June 10, 2014 |

<u>Introduction</u>

Carl Cozart (Appellant) appeals from the probate division's judgment after a jury trial committing him to secure confinement in the custody of the Missouri Department of Mental Health (DMH) as a sexually violent predator (SVP). We affirm.

<u>Factual and Procedural Background</u>

Appellant was born on January 16, 1955. During his formative years, Appellant was a voyeur, spying on his female relatives while they undressed and becoming sexually excited. In 1971, as a teenager (age 16) and in 1975, as a young adult (age 20), Appellant was discovered having sexual contact with females four to five years younger than him (ages 12 and 15, respectively). He began to have frequent problems with aggression. Appellant did not graduate from high school.

From 1973-1976, Appellant served in the military where he reportedly earned his high school diploma.

In 1977, Appellant pled guilty to a charge of assault with intent to do bodily harm. He was given 18 months of probation which he violated in 1979 and served an 18-month sentence. In 1976, 1977, 1978 and 1981, Appellant incurred various charges including being drunk in public, common assault, resisting arrest, trespassing, peace disturbance, DWI, and possession of marijuana.

In 1981, in Oklahoma City, Oklahoma, Appellant kidnapped a 75-year-old grandmother and her twelve- and seven-year-old granddaughters from a shopping center parking lot, tied up the grandmother and sodomized the children in front of her, first the twelve-year-old, then the seven-year-old. Appellant later said he did not want to deprive the younger child of the "pleasure," which is why he sodomized her as well.

In 1984, in St. Louis County, Missouri, Appellant was arrested for exposing himself to two children. He was sentenced to a year in jail, execution of sentence suspended, and two years' probation. On July 1, 1984, four days into his probation, Appellant attacked a woman jogger in a secluded, wooded area. Appellant hid in some bushes, then ambushed her, punching her in the face and breaking her nose. Appellant then sodomized and raped her.

On August 18, 1984, Appellant was charged by indictment with forcible rape and sodomy. On October 24, 1984, Appellant's probation for the exposure case was revoked. On April 3, 1985, Appellant pled guilty to forcible rape and sodomy and on May 3, 1985, was sentenced to 15 years on the rape count and 12 years on the sodomy count, to be served consecutively for a total of 27 years.[1] He began serving his sentence in the Missouri Department of Corrections (MDOC) on May 9, 1985.

---

[1] While in police custody for the St. Louis rape and sodomy, Appellant confessed to the Oklahoma crimes, for which he had not been under suspicion. After pleading guilty to the Missouri crimes, he was sentenced

While in prison for these sexually violent offenses, Appellant twice failed to complete the Missouri Sex Offender Program (MOSOP), once from December 7, 2003 to July 20, 2004 and then again from November 4, 2005 to January 24, 2006. His failures were due to his anger and disregard for the rules as well as his lack of cooperation and honesty. He was argumentative and unreceptive.

Appellant was interviewed on April 20, 2011, by Dr. Kimberly Weitl, clinical psychologist for MDOC, Behavioral Health Sex Offender Services. Dr. Weitl concluded in an End of Sentencing Report (report) dated April 20, 2011 that Appellant had a mental abnormality, specifically (1) paraphilia not otherwise specified (NOS), nonconsent; (2) exhibitionism; and (3) antisocial personality disorder, that made him more likely than not to commit future acts of predatory sexual violence unless confined to a secure facility, and thus it was her opinion that he met the definition of an SVP and his case would be referred to the Multidisciplinary Team (team). The four-member team found Appellant's SVP status-qualifying offenses were forcible rape, sodomy, indecent exposure, and the two counts of oral sodomy from Oklahoma. The team reviewed Appellant's records and Dr. Weitl's report on June 2, 2011, and unanimously voted that Appellant fit the SVP definition.

On June 17, 2011, the Missouri Attorney General's Office Public Safety Unit's Prosecutor's Review Committee (committee) held an open meeting on Appellant's status. After the meeting and review of the team's assessment, the five-member committee voted unanimously that Appellant met the definition of an SVP, and the State filed a petition for

---

to 27 years. Appellant was taken to Oklahoma where he pled guilty to two counts of kidnapping and two counts of oral sodomy and was sentenced to 27 years. He was then returned to Missouri to serve his sentence in the MDOC. The record on appeal is devoid of any documentation from Oklahoma with regard to whether he is serving the two state courts' sentences simultaneously, but Appellant told Dr. Weitl he was serving the Oklahoma sentence while in the MDOC.

Appellant's civil commitment to secure confinement in the DMH as an SVP upon the end of his imprisonment, which was anticipated to be July 4, 2011.

On September 16, 2011, the probate division found probable cause that Appellant was an SVP and scheduled the case for jury trial. On February 27, 2013, after a three-day trial, the jury found the State had proven by clear and convincing evidence that Appellant was an SVP, and upon such verdict the probate division issued its Judgment and Commitment Order finding Appellant was an SVP and committing him to the custody of the DMH for control, care, and treatment until such time as his mental abnormality has so changed that he is safe to be released. This appeal follows. Appellant presents two points on appeal.

## Discussion

### Point I

In his first point, Appellant maintains the probate division abused its discretion in overruling his request for a mistrial based on the State's asking him whether he told his MOSOP therapist that he was involved in a murder, because this ruling violated his rights to due process and a fair trial, as guaranteed by the Fourteenth Amendment to the United States Constitution, and Article I, Sections 10, 17 and 18(a) of the Missouri Constitution, in that whether he made a statement that he was involved in a murder was irrelevant; the probative value of such evidence was outweighed by its prejudicial nature; and there was no strict necessity for the admission of this evidence because none of the experts relied on the statement in determining whether he met the criteria to be committed as an SVP under Missouri law.

4

The trial court has discretion to grant or to deny a motion for mistrial. Croxton v. State, 293 S.W.3d 39, 42 (Mo.App. E.D. 2009). The declaration of a mistrial is a drastic remedy that should be used only in extraordinary circumstances where prejudice can be removed in no other way. Id. The trial court is in a better position to determine the prejudicial effect, if any, of improper evidence and to determine whether any prejudice that results can be ameliorated by less drastic means that declaring a mistrial. Id. This Court will reverse the denial of a motion for mistrial only where there has been a manifest abuse of discretion. Id. In order to establish a manifest abuse of discretion, there must be a grievous error where the prejudice cannot be removed otherwise. Id.

The probate division did not abuse its discretion in denying Appellant's motion for a mistrial. The motion was not timely made. Although defense counsel made a timely objection immediately after the question was posed to Appellant by the State and before Appellant answered, this objection was granted, and she did not request further relief in the form of a mistrial until the next day. On cross-examination of Appellant, the following exchange took place:

> [STATE]: You told Mr. Hefline in group therapy that you were involved in a murder?
> [DEFENSE]: Objection, may we approach?
> THE COURT: You may.
>
> (The following proceedings were held at side bar outside the hearing of the jury.)
>
> [DEFENSE]: Judge, I, again, object that none of the experts relied upon this. I think that it is highly prejudicial and has very low probative value because I am sure that people investigated it, and nobody thought that it was real. But to mention it and to go into it, it's going to be a very collateral type issue, and I think it should be excluded as irrelevant.
> THE COURT: Okay. [State]?
> [STATE]: He talked about it. I am not making it up for him.
> THE COURT: I am sustaining the objection.
> [DEFENSE]: And would you instruct the jury to disregard the question?

5

THE COURT: Okay. Except they are supposed to disregard an answer, but they are given - - I can't remember if it's criminal or not, but questions are not evidence is one of the instruction that you read.
[DEFENSE]: Okay.

Although the court indicated it would instruct the jury to disregard the question, it merely stated aloud for the record its ruling that the objection was sustained, with which defense counsel expressed her satisfaction:

(Proceedings returned to open court.)

[DEFENSE]: May I speak briefly with him just --
[STATE]: Judge, I am not sure what we have to speak about. I am sorry, she's speaking to her client.
THE COURT: Hold on just a second.
[DEFENSE]: I was just going to instruct him on what you ruled.
THE COURT: Okay. Well, I can state a ruling out loud. The objection is sustained.
[DEFENSE]: Okay. Thank you.

The State's cross-examination of Appellant then resumed, moving on to other areas of inquiry.

The next day, before the jury was brought in, counsel and the court had the following exchange:

[DEFENSE]: I would like to ask for a mistrial based on the state's question; [Appellant], did you admit committing a murder, or it was a question something like that. He didn't respond to it because I objected, and the Court sustained the objection, but I had filed - - you know, I had a motion *in limine* to exclude reference to that. And in looking back at my notes, the Court's ruling then was that you were going to wait to see if any of the experts relied on that statement, but other than that, we thought it was prejudicial.

And, you know, I think it is highly and unfairly prejudicial, and that if [State] wanted to ask him about it given our motion *in limine* ruling, that maybe he could have made an argument to the Court that it should be allowed at this point, but neither Dr. Weitl nor Dr. Scott mentioned anything about it. And, you know, putting - - throwing a murder in there just kind of lobbing it into our case, I think it's highly and unfairly prejudicial, deprives [Appellant] of his rights to due process of fair trial under Article 4, 5, 6 and 14 of the United States Constitution and under Articles 1, Section 10 and 19 of the Missouri Constitution. And

6

unfortunately I think the jury has been poisoned by the comment whether or not the instructions tell them to disregard, that evidence - - questions are not evidence.

THE COURT: Okay. [State], your response?

[STATE]: Well, I obviously will object to the inference that somehow I lobbed something that didn't have any evidentiary foundation into this case. On series 1, page 290, [Appellant] mentioned to treatment officials that he was involved in a murder 30 years ago. And certainly we have heard testimony that violence and psychopathy and antisocial behavior, which would include acts of murder, are relevant to risk.

This is [Appellant]'s statements. And while the Court sustained the objection, I wasn't violating the motion *in limine*. I was cross-examining [Appellant] as to statements attributed to him. And in fact in his deposition he tried to offer an alternative explanation as to why he said he committed a murder. He admits to it in his deposition. So this is not a surprise to the defense. It's not a surprise to anybody. And I think it's proper cross-examination of material in a case where we are trying to delve into the mental state of a person who has been violent and continues to be violent, and violence is an aspect of risk.

So it was fair territory. The Court did enter an objection. I didn't probe there after the objection. So as far as mistrial material, there isn't any - - that's a remedy for the most egregious and rarest of circumstances. This isn't one of those. This had foundation, and the objection was sustained. I didn't go further into it.

THE COURT: The request for a mistrial is denied.

If the drastic remedy of a mistrial is warranted, it is the responsibility of counsel to request that relief. State v. Hendrix, 883 S.W.2d 935, 945 (Mo.App. W.D. 1994). Where no such request is made, it is assumed that counsel is satisfied that the corrective action taken by the court is adequate. Id. A subsequent complaint that additional corrective measures were needed comes too late. Id.

In Hendrix, the prosecutor posed a particular question to a juvenile officer involved in the case. Id. at 944. Before the witness could respond to the question, defense counsel objected and the objection was sustained. Id. The court instructed the jury to disregard the question. Id. at 944-45. Defense counsel did not request a mistrial

7

at that time.  Id. at 945.  Thus, on appeal, the Court of Appeals found the appellant's claim for trial court error in failure to declare a mistrial was not preserved for review because the appellant was granted the relief he sought.  Id.  See also, Dunn v. Wal-Mart Stores, Inc., 909 S.W.2d 728, 730 (Mo.App. S.D. 1995) (defendant's objection to testimony sustained, request for mistrial six hours later at close of Plaintiff's evidence came too late for relief) and McMillin v. Union Electric Co., 820 S.W.2d 352, 355 (Mo.App. W.D. 1991) (inasmuch as the request for mistrial was not made at the time of the objection, the request came too late: "The request is waived if it is not made at the time of the improper statements or by proceeding with the trial in a manner inconsistent with the object of the request.").  McMillin is consistent with Hacker v. Quinn Concrete Co., Inc., 857 S.W.2d 402, 410 (Mo.App. W.D. 1993), which holds that when a trial court sustains an objection to improper argument and the objecting party fails to request further remedial action at that time, no error is preserved for appellate review.  In accord, Welch v. Burlington Northern Railroad Co., 807 S.W.2d 226, 228 (Mo.App. E.D. 1991).

Such is the situation in the instant case.  Defense counsel was granted the relief she sought, for which she thanked the judge and requested no more.  If defense counsel believed the prejudicial nature of the question and the harm it inflicted were so grievous that Appellant could not have received a fair trial even with the objection to the question sustained and the jury instructed not to consider questions as evidence, then defense counsel would have realized it in a timely fashion and requested appropriate relief.

Also, as noted, a question posed by counsel is not evidence, and the jury was so instructed in this case.  Appellant never answered the question.  Therefore, the probate division determined the jury did not need to be specifically told to disregard the question

8

after defense counsel's objection was sustained, because it was already instructed not to consider questions posed as evidence. It is normally presumed that the jury follows the instructions given it by the trial judge. State v. Lyons, 951 S.W.2d 584, 598 (Mo.banc 1997).

Based on the foregoing reasons, we find the probate division did not abuse its discretion in denying Appellant's request for a mistrial. Point I is denied.

Point II

In his second point, Appellant claims the probate division erred in overruling his motion for judgment of acquittal at the close of all evidence and in committing him to indefinite secure confinement in the custody of the DMH as an SVP, in violation of his right to due process of law guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Missouri Constitution, in that the evidence was insufficient to clearly and convincingly prove that he met the definition of an SVP according to Missouri law because the State failed to establish that he has a mental abnormality that makes him more likely than not to commit a future act of sexual violence, because paraphilia, not otherwise specified (NOS), nonconsent, is not a diagnosis listed in the DSM-IV-TR (DSM) and has been rejected for inclusion in the DSM-V and cannot be diagnosed under the category of paraphilia, because rape is considered to be more of a crime than a mental disorder.

In an SVP case, our review is limited to a determination of whether there was sufficient evidence admitted from which a reasonable fact finder could have found each necessary element by clear and convincing evidence. In re A.B., 334 S.W.3d 746, 752 (Mo.App. E.D. 2011). This Court does not reweigh the evidence. Id. We determine

9

only whether the judgment was supported by sufficient evidence. Id. Matters of credibility and weight of testimony are for the jury to determine. Id. For this reason, the evidence is viewed in the light most favorable to the judgment, accepting as true all evidence and reasonable inferences favorable to the judgment and disregarding all contrary evidence and inferences. Id. A judgment will be reversed on insufficiency of the evidence only if there is a complete absence of probative facts supporting the judgment. Id.

Pursuant to the SVP Act, Sections 632.480 through 632.513,[2] an SVP is defined as "any person who suffers from a mental abnormality which makes the person more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility" and who has pleaded or been found guilty of a sexually violent offense. Section 632.480(5). Appellant does not dispute that his conviction for rape qualifies as a sexually violent offense. Appellant only disputes that the State presented clear and convincing evidence that he suffers from a mental abnormality. A "mental abnormality" is "a congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to commit sexually violent offenses in a degree constituting such person a menace to the health and safety of others." Section 632.480(2). Dr. Richard Scott, a psychologist with the DMH, diagnosed Appellant with the mental abnormality paraphilia, NOS, nonconsent. Appellant maintains paraphilia, NOS, nonconsent is not a recognized mental abnormality and cannot be diagnosed under the category of paraphilia, because rape is considered to be more of a crime than a mental disorder. We disagree.

In In re Parnell, 390 S.W.3d 849, 852 (Mo.App. S.D. 2013), Dr. Kent Franks, a psychologist for the State, diagnosed the defendant with paraphilia, NOS, nonconsent.

---

[2] All statutory references are to RSMo 2006.

10

Dr. Franks testified he based his diagnosis on the defendant's "pattern of deviant arousal associated with aggressive sexual forcefulness" and his admission that he experienced a thrill from aggressive sexuality. Id. Dr. Franks further testified that paraphilia, NOS, nonconsent is a mental abnormality that is chronic in nature and cannot be cured. Id. Even though the defendant in Parnell argued the State failed to present sufficient evidence to make a submissible case that he suffered from a "mental abnormality," both Dr. Franks and the defendant's own witness, psychologist Dr. Kristie Scheu, testified that he suffered from paraphilia NOS, which qualified as a "mental abnormality" within the meaning of the SVP definition. The appellate court found that based on this testimony, "Clearly, there was sufficient evidence to support the jury's finding that Appellant had a mental abnormality." Id.

In the instant case, in support of his diagnosis of Appellant having the mental abnormality paraphilia, NOS, nonconsent, Dr. Scott explained that Appellant's anger sexually aroused him and he connected sex with aggression. Dr. Scott also testified Appellant displayed this from an early age.

Dr. Weitl also evaluated Appellant by interviewing him and reviewing his records. Dr. Weitl determined that Appellant suffered from the mental abnormality paraphilia, NOS, nonconsent, because he had engaged in sexual activity with three persons who did not consent. Appellant also told Dr. Weitl that he masturbated to rape fantasies. Dr. Weitl testified that paraphilia consists of a group of sexual dysfunctions including nonconsent, and she used the criteria from the DSM to diagnose Appellant.

Appellant disclosed in treatment that he is sexually aroused by aggression, and his act in slapping his rape victim triggered his desire to rape her and if he had not been

stopped, he probably would have killed someone for the excitement. He said that he had fantasies about being rejected and then raping the women who rejected him.

Dr. Scott also found that Appellant suffered from two other paraphilias, voyeurism and exhibitionism, and that he had antisocial personality disorder. He said the combination of Appellant's paraphilias and his antisocial behavior is predictive of dangerous behavior in the future.

Both Dr. Scott and Dr. Weitl testified they used the DSM in diagnosing Appellant. Dr. Scott explained that in using the DSM, after it is determined that a person suffers from paraphilia NOS, the next step is to include the specific type of paraphilia even though it was not on the list. He testified that those included in the DSM were examples and were not exclusive. In Parnell, Dr. Franks stated that the defendant was sexually excited by rape, and "the only diagnosis for rapists in the DSM IV is paraphilia not otherwise specified, non-consenting." Parnell, 390 S.W.3d at 853 n.2. Such a diagnosis was also accepted as constituting a mental abnormality sufficient to support an SVP status in Dunivan v. State, 247 S.W.3d 77, 78 (Mo.App. S.D. 2008).

Based on the foregoing evidence and case law, we find that paraphilia, NOS, nonconsent qualifies as a mental abnormality for purposes of the SVP definition.

In terms of his risk of reoffending if not confined in a secure facility, Dr. Scott scored Appellant on the Static 99R[3] and the Static 2002R to determine his risk of reoffending. He gave Appellant a score of 8 on the Static 99R which placed Appellant in the 99.1% risk to reoffend, which is 7.32 times more likely to reoffend than the average sex offender. Appellant scored a 46.3% risk of being convicted of another sexually

---

[3] The Static 99R underestimates a person's simple risk of reoffending as it only considers reconvictions for *violent* sexual crimes and is limited to 10 years.

violent crime within 10 years. Appellant received a score of 9 on the Static 2002R, which gave him a 48.1% risk of being convicted of another sexually violent crime within 10 years.

Dr. Weitl used actuarial tests Static 99 and the Minnesota Sex Offending Screening Tool Revised ("MnSOST-R") to determine whether Appellant was more likely than not to reoffend if not in a secure facility. Appellant scored in the highest risk category on the MnSOST-R, having a 72% chance of being rearrested for a violent sexual crime within 6 years.

Based on the foregoing evidence, testimony, and legal authority, we find Appellant's diagnosis in this case of paraphilia, NOS, nonconsent is a mental abnormality which makes him more likely than not to commit a future act of sexual violence, which the State established for the jury by clear and convincing evidence. We reject Appellant's position that his diagnosis cannot serve as the basis for establishing his mental abnormality for the purpose of the SVP statute because it is not specifically listed in the DSM or "because rape is considered to be more of a crime than a mental disorder." Point II is denied.

### Conclusion

The judgment of the probate division is affirmed.

_Sherri B. Sullivan_
Sherri B. Sullivan, J.

Lawrence E. Mooney, P.J., and
Robert G. Dowd, Jr., J., concur.

13