

# NUMBER 13-11-00687-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI − EDINBURG

GINA Y. QUINTANILLA,                      **Appellant,**

**v.**

CONSUELO YBARRA,                        **Appellee.**

### On appeal from the County Court at Law
### of San Patricio County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Benavides and Longoria
### Memorandum Opinion by Justice Longoria

In three issues, which we will renumber and address as seven, appellant, Gina Quintanilla, challenges the legal and factual sufficiency of the trial court's verdict in favor of appellee, Consuelo Ybarra, and of six of the supporting findings of fact, and argues that the judgment does not conform to the pleadings. For the reasons stated below, we affirm.

## I. BACKGROUND

In 2001, Ybarra's husband died of illnesses related to his exposure to asbestos. The Ybarra family received a $41,000 settlement; all family members, including

Quintanilla, agreed in writing that Ybarra would receive 100% of the settlement. Ybarra testified that when she received the settlement money, she "gave it to my daughter, [Quintanilla] in her hands, and told her to save it for me in the bank so that when I needed it, she would give me some."[1] Ybarra later filed suit alleging that Quintanilla misappropriated $22,124.32 of the settlement money.[2] The parties waived argument and submitted proposals for the court's ruling. The court heard testimony, primarily regarding the nature and extent of Quintanilla's expenditures out of the settlement monies, and rendered judgment for Ybarra in the amount of $22,124.32.[3]

Quintanilla admitted during her testimony that she paid her own property taxes out of the settlement money. Quintanilla claimed that she paid the taxes with Ybarra's money because the two had agreed that Ybarra would be responsible for the taxes, but Quintanilla did not produce any evidence of the agreement.[4] Quintanilla argued during her testimony that she spent over $60,000 on behalf of Ybarra and that she is actually owed money. At Quintanilla's request, the court issued findings of fact and conclusions of law. Quintanilla also filed a motion for judgment notwithstanding the verdict and

[1] Ybarra testified that she chose to entrust the settlement to Ybarra in this way because it would allow Ybarra to pay Quintanilla's bills "through the computer." Ybarra has a first-grade education, does not speak English, and is illiterate.

[2] Ybarra also alleged that Quintanilla fraudulently induced her to transfer a 7.5 acre parcel of land and home located in Sinton, Texas (the "Sinton Property"), and another home located in Odem, Texas (the "Odem House"). The trial court dismissed Ybarra's claims regarding title to the land for lack of jurisdiction.

[3] This figure is from the trial court's amended judgment. The trial court originally rendered judgment for $28,368.93.

[4] At one point prior to trial, Quintanilla's attorney wrote to Ybarra's attorney stating that the property taxes had been "historically paid" by Ybarra, "as part of a life estate." The issue of title to the two parcels is not before us, but the deeds conveying the parcels to Quintanilla are in the record. The deed for the Odem House is largely illegible, but the title contains the phrase "With Reservation of Life Estate." In any event, Quintanilla did not argue at trial that Ybarra was responsible for the property taxes because she was a life tenant, but argued that there was "an agreement between all of us." Quintanilla specifically denied that the agreement was in writing because "I didn't think I needed anything in writing from my parents." Quintanilla also does not assert on appeal that Ybarra was responsible for the property taxes because she was a life tenant.

alternative motions to reconsider the judgment and for new trial. The court entered an amended final judgment but did not expressly rule on Quintanilla's motion. Quintanilla's motion was subsequently overruled by operation of law. *See* TEX. R. CIV. P. 329b. This appeal followed.

## II. DISCUSSION

In seven issues, Quintanilla challenges the legal and factual sufficiency of the trial court's judgment, six of the supporting findings of fact, and argues that the trial court's judgment did not conform to the pleadings. In an appeal from a bench trial in a civil case, an attack on the sufficiency of the evidence must generally be directed at specific findings of fact, rather than the judgment as a whole. *Arrellano v. State Farm Fire & Cas. Co.*, 191 S.W.3d 852, 855 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (citing *Zagorski v. Zagorski*, 116 S.W.3d 309, 319 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)); *see* TEX. R. CIV. P. 299. Accordingly, we will consider Quintanilla's first and second issues together as six issues, one for each of the challenged findings of fact.

### A. Legal and Factual Sufficiency

#### 1. Standard of Review

We review a trial court's findings of fact for legal and factual sufficiency with the same deference and under the same standards as jury verdicts. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam); *Arrellano*, 191 S.W.3d at 857. "[U]nchallenged findings of fact are binding on an appellate court unless the contrary is established as a matter of law or no evidence supports the finding." *Arrellano*, 191 S.W.3d at 855.

3

We will sustain a legal sufficiency issue (also called a no-evidence issue), when:

> (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact.

*Marathon Corp v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003) (per curiam); *see Brockie v. Webb*, 244 S.W.3d 905, 909 (Tex. App.—Dallas 2008, pet. denied); *Arrellano*, 191 S.W.3d at 856. More than a scintilla of evidence exists if the "evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (citing *Merrell Dow Pharm., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex. 1997)); *see City of Keller v. Wilson*, 168 S.W.3d 802, 812 (Tex. 2005). Evidence is less than a scintilla if "it is so weak as to do no more than create a mere surmise or suspicion of its existence." *Ford Motor Co*, 135 S.W.3d at 601*.* We must review "the evidence in a light that tends to support the finding of the disputed fact and disregard all evidence and inferences to the contrary." *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex. 2001) (citing *Weirich v. Weirich*, 883 S.W.2d 942, 945 (Tex. 1992)); *see City of Keller*, 168 S.W.3d at 819–20.

In contrast, when an appellant challenges the factual sufficiency of the trial court's findings, we consider and weigh all the evidence in the record. *City of Pharr v. Boarder to Boarder Trucking Serv., Inc.*, 76 S.W.3d 803, 807 (Tex. App.—Corpus Christi 2002, pet. denied). We set aside the verdict only if it "is so against the overwhelming weight of the evidence as to be clearly wrong and unjust." *Arrellano*, 191 S.W.3d at 856 (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)); *see City of Pharr*, 76 S.W.3d at 807; *Brockie*, 244 S.W.3d at 909.

4

## 2. Analysis

In her first issue, Quintanilla challenges the trial court's second finding: "[t]hat [Quintanilla] promised [Ybarra] that the approximate sum of $41,000.00 [Ybarra] received from her [sic] husband's Asbestos settlement would be kept by [Quintanilla] and used solely for the benefit of [Ybarra]." Quintanilla argues that "there is absolutely no evidence to support the existence of a 'promise' or anything similar." However, Ybarra testified regarding the settlement money, stating, "I gave it to my daughter, in her hands, and told her to save it for me in the bank so that when I needed it, she would give me some." During her own testimony, Quintanilla admitted that 100% of the money was to go to her mother, and never contradicted Ybarra's allegation that she promised to use the settlement money only to pay Ybarra's own bills.[5] Instead, Quintanilla maintained that her expenditures were, in fact, on Ybarra's behalf. In a "summary" requested by the trial court after the trial, Quintanilla stated that the testimony that "[Quintanilla] was given $41,000 to manage on behalf of [Ybarra]" was "uncontroverted." Based on the foregoing, we conclude that the evidence is legally sufficient because there is more than a scintilla of evidence that Quintanilla promised Ybarra that Quintanilla would only pay Ybarra's bills from the settlement money. Furthermore, because the finding is not so contrary to the overwhelming weight of the evidence as to be unjust, we conclude that the evidence is factually sufficient to support the trial court's finding. We overrule Quintanilla's first issue.

In her second issue, Quintanilla challenges the trial court's tenth finding, that "all other payments [Quintanilla] claims were made for the benefit of [Ybarra] were either

---

[5] Much of the dispute between Quintanilla and Ybarra appears to be the result of Quintanilla's failure to keep the settlement money separate from her personal funds.

not made by [Ybarra] or were made to benefit [Quintanilla] only."[6]  Quintanilla argues that this finding "is not supported by either testimony or documents."  However, although Quintanilla held title to both the Sinton Property and the Odem House at the time, Quintanilla admitted that she paid the property taxes for both parcels out of the settlement money.  Property taxes are generally the responsibility of the record owner of the property.  *See* TEX. TAX CODE ANN. § 32.07(a) (West 2008); *Peoples Gas, Light, and Coke Co. v. Harrison Cent. Appraisal Dist.*, 273 S.W.3d 208, 212 (Tex. App.—Texarkana 2008, pet. denied).  Quintanilla testified that she and Ybarra agreed that Ybarra would be responsible for the property taxes even though Quintanilla held legal title to both properties. We conclude that the evidence is legally sufficient because there is more than a scintilla of evidence to support the trial court's finding that Quintanilla's other expenditures out of the settlement funds, such as paying the taxes due on Quintanilla's real property, were not made for Ybarra's benefit.  We conclude that the evidence is also factually sufficient because it is supported by the majority of the evidence that was before the trial court.  Quintanilla's second issue is overruled.

In her third issue, Quintanilla challenges the trial court's finding that "[Quintanilla]'s promise was false."[7]  Proof that a declarant made a statement with knowledge of its falsity can be established by direct or circumstantial evidence. *Burleson State Bank v. Punkett*, 27 S.W.3d 605, 613 (Tex. App.—Waco 2000, pet. denied).  There is uncontested evidence in the record that Quintanilla agreed that the

---

[6] Ybarra admitted that certain expenditures, (like insurance, phone, water, electric and medical bills) were for her benefit.  The trial court found to that effect in its seventh, eighth and ninth findings, which are unchallenged by either party.

[7] The trial court designated this and the finding on damages, considered below, as conclusions of law.  It is a finding of fact, and we will treat it as such.  *See Clay v. Mercado*, 224 S.W.3d 277, 283 n.1 (Tex. App.—El Paso 2005, no pet.) ("The trial court's designation of a 'finding of fact' or a 'conclusion of law,' however, is not controlling, and we may treat a conclusion of law as a finding of fact when appropriate.").

entire settlement belonged to Ybarra, but Quintanilla used the settlement money to pay the property taxes on Quintanilla's own property. Quintanilla also provided no further proof of the agreement she testified existed between her and Ybarra. As we discussed above, Quintanilla never denied in the trial court that she had promised to pay Ybarra's bills with the settlement money. Quintanilla instead attempted to prove that payments Quintanilla made out of the settlement monies were Ybarra's own bills. Rose Samaniego, one of Quintanilla's sisters, further testified that during a "family meeting" Quintanilla refused to give the remainder of the settlement money to Ybarra because she was saving it for Ybarra's future nursing home expenses. In short, there is more than a scintilla of evidence in the record from which the fact-finder could infer that Quintanilla's promise was false at the time it was made. Because the finding is also not so contrary to the great weight of the evidence, we hold that the evidence is factually sufficient to support this finding. We overrule Quintanilla's third issue.

In her fourth issue, Quintanilla challenges the sufficiency of the evidence to support the trial court's twelfth finding of fact that: "[Quintanilla] never introduced bank statements to prove $18,000 was withdrawn from [Quintanilla]'s bank account to give to [Ybarra]." Quintanilla argues that "[t]his finding suggests, but does not state, that such evidence did not exist. [Quintanilla]'s testimony is clear, however, that those monies were withdrawn." This finding refers to several sums of money that were withdrawn by Quintanilla and delivered to Ybarra for various miscellaneous purposes such as upkeep of properties. Quintanilla and Ybarra dispute the amount and purpose of these withdrawals. Quintanilla interprets this finding as impliedly stating that she did not withdraw that money and deliver it to Ybarra. We interpret it merely as the trial court's finding that although Quintanilla stated on direct examination in reference to these

monies that "[t]he withdrawals are in the bank statements I gave you," Quintanilla did not produce any bank statements showing withdrawals in those amounts from her accounts.[8] We have reviewed the record, and we found no bank statements referencing these withdrawals. Quintanilla does not explain where they can be found in the record. Furthermore, even if this finding is a comment on the existence of this evidence, the trial court, as the finder of fact, could disbelieve any part of all of Quintanilla's testimony regarding the withdrawals. *See City of Keller*, 168 S.W.3d at 819. Accordingly, we conclude that the evidence is legally and factually sufficient to support this finding. We overrule Quintanilla's fourth issue.

In her fifth issue, Quintanilla challenges the trial court's finding that Ybarra suffered $24,236.56 in damages. Quintanilla argues only that this finding is "at variance with both the evidence produced at trial and the pleadings before the court." Quintanilla does not provide any citation to evidence in the record supporting this contention. Ybarra put on evidence that Quintanilla paid at least $13,031.05 in property taxes out of the settlement monies and spent at least $10,000 in other bills, which were not Ybarra's bills, out of the settlement monies. Although Quintanilla and Ybarra disagree on the precise details of the non-tax expenditures, we conclude that this evidence is both legally and factually sufficient to support the trial court's finding of damages. Quintanilla's fifth issue is overruled.

In her sixth issue, Quintanilla challenges the sufficiency of the evidence with respect to the trial court's fourteenth finding of fact, that "[t]he testimony of [Quintanilla], and the testimony of her witnesses was not credible." Quintanilla argues that this

---

[8] The "you" in this statement refers to Quintanilla's lawyer. Quintanilla appears to be referring to the bank statements that she supplied her lawyer before trial.

8

finding "pretends to cloak an opinion in the garb of fact," and that no reasonable trier of fact would have regarded Quintanilla's testimony and that of her other witnesses as "less than truthful." However, the finder of fact, in this case the trial court judge, is the sole judge "of the credibility of the witnesses and the weight to give to their testimony." *Id.* The fact finder "may choose to believe one witness and disbelieve another." *Id.* We may only overturn the trial court's findings if no reasonable person could find to the contrary. *Id.* at 820. Quintanilla argues that no rational factfinder could regard her testimony and that of her witnesses "as less than truthful," but she does not provide any argument in support of this contention. Because we must give almost total deference to the trial court's determination of the credibility of a witness that testified before it, and since Quintanilla does not explain why the trial court could not rationally decide that the testimony she offered was not credible, we conclude that Quintanilla has not demonstrated that the evidence is legally or factually insufficient to support the challenged finding. *See id.* We overrule Quintanilla's sixth issue.[9]

### B. Judgment Conformed to the Pleading

In her seventh issue, Quintanilla argues that Ybarra never actually alleged in her pleadings to the trial court that "[Quintanilla] acted to defraud [Ybarra] with respect to the Asbestos settlement." Any judgment of the trial court "must be supported by the pleadings, and a party may not be granted relief in the absence of pleadings to support such relief." *Salomon v. Lesay*, 369 S.W.3d 540, 553 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *see* TEX. R. CIV. P. 301. However, issues not pleaded may be tried by the express or implied consent of both parties. TEX. R. CIV. P. 67. Quintanilla reminds

---

[9] Quintanilla also challenges the trial court's eleventh finding of fact, which relates to whether Quintanilla's father ever transferred his interest in either the Odem House or the Sinton Property to Quintanilla. We will not address this issue because, as we noted above, the trial court dismissed all of Ybarra's claims relating to title to the lands.

9

us that "issues are not tried merely by the hearing of testimony thereon," and we instead look to whether the issue was actually tried. *Sage Street Assoc. v. Northdale Const. Co*, 863 S.W.2d 438, 446 (Tex. 1993); *see also Ingram v. Deere*, 288 S.W.3d 886, 893 (Tex. 2009). Other than citing to *Sage Street*, Quintanilla does not directly argue that the theory of fraud was not tried by consent. Quintanilla only argues that "[v]irtually the entire case presented by [Ybarra] at trial involved whether or not the funds were distributed for [Quintanilla]'s versus [Ybarra]'s benefit" and because there is no proof that "any of the questioned expenditures benefitted [Quintanilla] to the exclusion of [Ybarra]," there is a variance between the pleadings and proof at trial that requires reversal. We note that paragraph nine of Ybarra's first amended petition stated that "[Ybarra] would show that [Quintanilla] has misappropriated to [Quintanilla's] benefit the sum of $22,124.32," and details Quintanilla's specific expenditures with the settlement money, but does not discuss the elements of fraud. In any event, Quintanilla did not raise this issue with the trial court, and argues it for the first time on appeal. We will not consider this issue because as a general rule we will not review the actions of a trial court on an issue that was not presented to it at the time. *Barnard v. Barnard*, 133 S.W.3d 782, 789 (Tex. App.—Fort Worth 2004, pet. denied); *Methodist Hospitals of Dallas v. Tall*, 972 S.W.2d 894, 898 (Tex. App.—Corpus Christi 1998, no pet.) ("It is axiomatic that an appellate court reviews actions of a trial court based on the materials before the trial court at the time it acted."); *Brown Services, Inc. v. Fairbrother*, 776 S.W.2d 772, 774 (Tex. App.—Corpus Christi 1989, writ denied). We overrule Quintanilla's seventh issue.

### III. CONCLUSION

We affirm the judgment of the trial court.

_____
NORA L. LONGORIA
Justice

Delivered and filed the
16th day of May, 2013.

11